UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES ALLEN TERRY, JR.                                    CIVIL ACTION

VERSUS                                                   NO. 07-469

CITY OF NEW ORLEANS, ET AL                              SECTION  "A" (3)

ORDER AND REASONS

This matter is before the Court pursuant to 28 U.S.C. § 636c.  *See* Consent to Jurisdiction

and Order of Reference [Rec. Doc. No. 25].  Presently before the Court is the Motion  for Summary

Judgment  # 46  filed on behalf of defendants, the City of New Orleans, Mayor C. Ray Nagin,

Former Superintendent of the NOPD Edwin Compass and Superintendent Warren J. Riley, III

(hereinafter the "Municipal Defendants").  Present were Katherine Murphy Schwartzmann on behalf

of plaintiff and James Bryan Mullaly on behalf  the Municipal Defendants.  Pursuant to the hearing,

the undersigned GRANTED the City Defendants' motion on the basis of both qualified immunity

and failure to state a cognizable claim for the following reasons.

BACKGROUND

On January 24, 2007, plaintiff James Allen Terry, Jr. (Terry) filed suit pursuant 42 U.S.C.

§ 1983 alleging civil rights violations against Louisiana's Secretary of Department of Public Safety

and Corrections Richard L. Stalder, Warden Cornel H. Hubert, the City of New Orleans, Mayor C.

Ray Nagin, Superintendent (Warren J. Riley) and Former Superintendent (Eddie Compass) of the

New Orleans Police Department and the Orleans Parish Criminal Sheriff Marlin N. Gusman.

Plaintiff alleges that he was arrested in the City of New Orleans on September 11, 2005, despite the

fact that he is an Army and National Guard veteran and had no criminal record at the time of his

1

arrest.  Plaintiff believes that he was arrested for looting, possession of a controlled substance and possession of a firearm (a broken BB gun); however, Terry alleges that he was never formally charged with a crime.   At the time of his arrest by National Guardsmen, plaintiff alleges that the New Orleans Police Department was notified[1] and then he was transported to the Greyhound Bus Station in New Orleans ("Camp Greyhound"), where plaintiff was forced to sleep on the oil-soaked concrete floor for two nights using his shoes as a pillow.  Terry complains that his personal effects were taken and never returned.  Thereafter, he was transported to Elayn Hunt Correctional Center (EHCC) in St. Gabriel, Louisiana.

Terry claims that at EHCC he was first housed in an overly-crowded cell located in a maximum- security cellblock for a month and then moved to Hunt's carpentry shop, which had become an insect-infested overly-crowded holding area with 65 men sharing one toilet.  Terry alleges that he and other detainees were given no access to the law library or exercise facilities and that, other than to eat meals, they were not allowed to leave their makeshift cells.  Plaintiff alleges that throughout the entirety of his 190 days of incarceration,  he was denied access to necessary eye care until released on April 4, 2006.  Plaintiff further avers that he was brought before a person at the Correctional Center, who fixed bail at the sum of $300,000.00.

Plaintiff alleges the following violations of his constitutional rights, to wit: (1) unlawful search and seizure in violation of the Fourth Amendment; (2) unlawful detainment/incarceration without charges, a hearing or access to the Courts in violation of the First, Fifth and Fourteenth Amendments; (3) denial of his Sixth Amendment right to counsel; (4) excessive bail and unlawful conditions of confinement in violation of the Eighth Amendment; and (5) denial of the right to

---

[1]The New Orleans Police Department Incident Report, Item No. I-0270-2005

habeas corpus in violation of Article I, Section 9 of the Constitution of the United States.  In addition, plaintiff asserts pendent claims under Louisiana law, including false imprisonment, malicious prosecution and denial of his rights to due process, bail, counsel and speedy trial.  Terry seeks an award of compensatory, punitive and nominal damages, as well as declaratory relief.

Plaintiff also filed a First Amended Complaint (Doc. No. 30); however, Terry's amendments solely address constitutional violations allegedly perpetrated during the period of his detention at Hunt Correctional Center in St. Gabriel Louisiana.

## II. STANDARDS OF REVIEW

### Motion to Dismiss

Under Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint if it fails to state a claim upon which any relief may be granted.  *See* Fed.R.Civ.P. 12(b)(6).   The court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).  A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief.   While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b)(6) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir.1997).

### Summary Judgment

The principal purpose of Fed. R. Civ. P. 56 is to "isolate and dispose" of factually unsupported claims.[2]   Summary judgment is proper where "the pleadings, depositions, answers to

---

[2]*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

3

interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact...."[3]   There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.[4]

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]   A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[6]  "In such a situation, there can be 'no genuine issue of material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[7]

The Court has no duty to search the record for triable issues.[8]  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.[9]  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."[10]   Conclusory statements,

---

[3]Fed. R. Civ. P. 56(c).

[4]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

[5]*Celotex*, 477 U.S. at 323.

[6]*Nebraska v. Wyoming,* 507 U.S. 584, 590 (1993); *Celotex,* 477 U.S. at 323; *Wenner v. Texas Lottery Commission,* 123 F.3d 321, 324 (5th Cir.), *cert. denied,* 523 U.S. 1073 (1998).

[7]*Celotex,* 477 U.S. at 322-23.

[8]*Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[9]*Celotex,* 477 U.S. at 248-50;  *Abbot v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir. 1993).

[10]*Ragas*, 136 F.3d at 458 (emphasis added).

speculation and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.[11]  "Summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"

### III. CONTENTIONS OF THE PARTIES

Defendants, the City of New Orleans, Mayor C. Ray Nagin, Former Superintendent of the New Orleans Police Department (NOPD) Edwin Compass and Superintendent Warren J. Riley, III filed the instant motion to dismiss and/or for summary judgment arguing that the claims against the aforesaid municipal defendants are prescribed and that, in any event, plaintiff has not identified any facts which describe wrongdoing perpetrated by the aforesaid municipal defendants.  Indeed, the only allegations which can possibly apply as against the municipal defendants are plaintiff's fourth amendment claims for false arrest, illegal search and seizure and detention at Camp Greyhound. Municipal defendants note that, even according to plaintiff's allegations, the allegedly unlawful search, seizure and arrest was executed by a unit of  Iowa National Guard (Sgt. Moriah D. Harris and members of his fire team).  *See* Plaintiff's Complaint at ¶ ¶7-8 [Rec. Doc. No. 1];[12]  September 11,

---

[11]*Id.*; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996).

[12]Paragraphs 7 and 8 of the Complaint allege that:
"On the night of September 11, 2005 Complainant was standing on the porch of his residence, when a unit of the Iowa National Guard saw him.  For reasons unknown to complainant, *members of the National Guard* climbed over the fence around his residence and broke into the building.  By breaking a window, they then broke into Complainant's room, in which he resided with two other persons.  The national guardsmen had no probable cause to believe that Complainant had committed a crime, and neither did they have a warrant for the search of his resident.  The national guardsmen found a BB gun and one marijuana cigarette."  Complaint at §§ 7-8 [Rec. Doc. No. 1].

2005 Incident Report executed by Iowa Guard Sgt. Moriah Harris utilizing an NOPD form/Item No. I-0270-2005 [Municipal Defendants' Exh. "2"/Doc. No. 45-5].[13]   It is also undisputed that the temporary detention facility (Camp Greyhound) was operated by the Department of Corrections (DOC) and others (including the Criminal Sheriff for Orleans Parish, Marlin N. Gusman) but not the City of New Orleans or the New Orleans Police Department.[14]  Suffice it to say, the only allegation against any member of the NOPD appears at paragraph 9 of the complaint, to wit:

> *Upon information and belief,* the national guard personnel notified the New Orleans Police Department who arrested the Complainant for looting, possession of a controlled substance and possession of a firearm, notwithstanding the fact that no probable cause existed for the search of Complainant's residence, nor was there probable cause to believe that Complainant had committed any offense.

Complaint at ¶9 (italicized emphasis added) [Doc. #1].

    Defendant contends that there is a pleading void and that the facts surrounding the

_____

[13]Iowa Guard Sgt. Harris's sworn statement dated September 11, 2005 specifically notes that he arrested the subject James Allen Terry, Jr. [Rec Doc. No. 45-5/page 3 of 9].  Sgt. Harris noted that "while conducting presence patrols in Sector J of 45th INF BDE's sector," he spotted Terry (Individual Mentioned) on the third floor balcony of the St. Vincent Guest house.  "As per standard operating procedures," he and his fire team investigated "suspicious activity."  Finding the building unsecured, they searched all floors and found Terry on the first floor and, "once ... backed into a corner, he (Terry) went hands-up." An "initial look-over of the premises revealed a compound bow on the floor, drug paraphernalia, probable stolen goods as well as tools for forced entry." "[W]e detained [Terry] and called for NOPD." " NOPD arrived, conducted a cursory search of the area and left us (the Guard) to transport [Terry] to the detaining facility."  *Id.* at p. 4 of 9; *see also* Statement of ATF Special Agent Ryan Zormes/ATF 4386 dated September 12, 2005 *id.*, at p. 9 of 9 (stating that Terry waived his rights and admitted that he removed a BB gun from Mrs. Ethel's apartment, other items (Chili's gift cards, computer equipment and prescription pill bottles from other apartments) and marijuana which personally consumed).

[14]*See* Plaintiff's Complaint states:  "Complainant was taken to the Greyhound Bus Station in the city of New Orleans which had been converted into a city jail.  After having his booking pictures taken, Complainant was made to pose with a *member of the National Guard* (not the NOPD) as if he (plaintiff) w(as) a 'trophy.'  Complainant alleges on information and belief that Marlin N. Gusman, the Criminal Sheriff of Orleans Parish, was administering this makeshift jail."  Complaint at ¶ 10.

6

investigation of activity at St. Vincent's Guesthouse, Terry's arrest/detention and transport to Camp Greyhound are undisputed. *See* Plaintiff's Complaint ; NOPD Incident Report dated 9-11-2005 (Defendants' Exh. "2"). None of the municipal defendants facilitated the investigation of suspicious activity at the guesthouse, Terry's arrest/search and seizure, filing or swearing to statements contained in the incident report, transport of the plaintiff to "Camp Greyhound" or his processing/booking at that temporary detention facility. Movants' position is that the claims against the Municipal Defendants are frivolous and without any basis in fact.

Plaintiff disputes that the claims are prescribed. Terry highlights that the incident report is on an NOPD form and contends that it contains no affidavit or sworn testimony supporting any of the alleged facts asserted in the documents. Plaintiff points to the statement of guardsman Harris and argues that the defendant's own document shows that the NOPD was involved in Terry's arrest. Nevertheless, Sgt. Harris's sworn statement merely states that the NOPD arrived and conducted a cursory search of the area and the guardsmen transported plaintiff to the detention facility. Plaintiff urges that, at this stage of the proceedings, his allegations must be accepted as true and the facts pled sufficiently state a claim against the municipal defendants.

## IV. ANALYSIS

### A. Qualified Immunity

#### 1. Distinction between suits against officers in official and individual capacities

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[15] Official-capacity suits

---

[15]*Turner v. Houma Municipal Fire and Police Civil Service Board*, 229 F.3d 478, 484 (5th Cir. 2000).

generally represent only another way of pleading an action against an entity of which an officer is an agent.  However, to be liable in one's official capacity under § 1983, the defendant must have been delegated policy-making authority under state law.[16]  In essence, suing a party in his official capacity is duplicative of an action against the municipality which the official serves as an agent.

In contrast, personal-capacity suits which seek to impose individual liability upon a government officer for actions taken under color of state law are recognized under § 1983.[17]  A state official can be sued in his individual capacity and held personally liable under § 1983 if it can be shown that the official, acting under state law, caused the deprivation of a federal right.[18]  However, such persons are entitled to assert the defense of qualified immunity.

Here, the named officers (former Superintendent of Police Eddie Compass and Superintendent/ former Deputy Chief Warren Riley) were sued both in the official and individual capacities.  The claims against the municipality are properly addressed along with the claims against city officials, Mayor Nagin, Eddie Compass and Superintendent Riley.  Because the unnamed NOPD officers who performed a cursory search of the premises after Terry's arrest do not have final policy-making authority, the Court examines the claims against them as actions strictly in their individual capacity.

### 2. Section 1983 and Qualified Immunity

Title 42, United States Code, Section 1983 provides that every person, who, under color of state law, subjects, or causes to be subjected, any person within the jurisdiction of the United States

---

[16]*City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988).

[17]*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[18]*Id.* at 25-31

to "a deprivation of any rights, privileges, or immunities under the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper preceding for redress ." *Id*. Qualified immunity protects police officers charged with discretionary duties from suit unless their conduct violates a clearly established constitutional right.[19]   The burden is on the plaintiff to overcome a defendant's defense of qualified immunity.[20]   One of the purposes of the qualified immunity defense is "avoidance of disruptive discovery" unless and until the plaintiff puts forward "specific, nonconclusory factual allegations" which would overcome the defense.[21]   When sued in their individual capacities, governmental employees are entitled to a presumption of qualified immunity from suit.[22]

When considering a claim of qualified immunity, courts engage in a bifurcated analysis. First, it must be determined whether the plaintiff has alleged a violation of a constitutional right.[23] If so, the court must then determine whether the defendant's conduct was objectively reasonable, because, even if an official's conduct violates a constitutional right, that official is entitled to qualified immunity if the conduct was objectively reasonable.[24]

An official is subject to liability if the right was clearly established at the time of the action in question. Because the focus is on whether the officer had fair notice that his conduct was unlawful,

---

[19] *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

[20] *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir.1994).

[21] *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring).

[22] *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990).

[23] *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir.1993).

[24] *Id.* (*citing Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir.1993)).

reasonableness is judged against the backdrop of the law at the time of the conduct.[25]  The Supreme

Court in *Broussea* emphasized that "this inquiry 'must be undertaken in light of the specific context

of the case, not as a broad general proposition.'"[26]  A right is clearly established only when its

contours are "sufficiently clear that a reasonable official would understand that what he is doing

violates that right."[27]  "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted."[28]  The effect of qualified immunity is to grant officers immunity from

reasonable mistakes as to the legality of their actions.[29]   The objective reasonableness standard

"provides ample protection to all but the plainly incompetent and those who knowingly violate the

law."[30]

### B.  The Alleged Illegal Search, Seizure and Unlawful Arrest by NOPD Officers

Defendants assert that they are entitled to summary judgment dismissing these claims because

the Plaintiff can offer no evidence demonstrating that the officers of the NOPD illegally entered the

premises at issue and/or searched or arrested Terry.  Defendants argue that there exists no genuine

issue of material fact as to the existence of probable cause which provoked Iowa National Guardsmen

to enter the premises, execute the search and then to arrest Terry.  Plaintiff only states in broad terms

---

[25]*Broussea v. Haugen*, 543 U.S. 194, 198 (2004).

[26]*Id.* (*citing Saucier v. Katz*, 533 U.S. 194, 201(2001)).

[27]*Id.* (quotations and citations omitted).

[28]*Id* . (quotations and citations omitted).

[29]*Katz*, 533 U.S. at 206.

[30]*Malley v. Briggs*, 475 U.S. 335, 341 (1986).

that NOPD officers who responded to the guardsmen's call and performed a cursory search after-the-fact were somehow involved in the incident.

The law is clear that an individual plaintiff must set forth facts that identify the officer or officers who were personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.[31]  Conclusory allegations are insufficient to state a constitutional violation.  Plaintiff fails to identify which officer or officers – other than Iowa National Guardsman Sgt. Harris and members of his fire team – may have illegally entered the St. Vincent Guest House searched the premises and effected his arrest.  Moreover, Sgt. Harris, affiant with respect to the incident report in question, affirmatively detailed in writing that it was he and his fire team who entered the guest house, searched the apartments, arrested the plaintiff and transported him to the temporary lock-up facility.

Insofar as the plaintiff alleges that he was subjected to false arrest in violation of his Fourth Amendment rights, the "constitutional torts" of  false arrest, unreasonable seizure and false imprisonment all require a showing of no probable cause.[32]  The probable cause analysis only requires that the court find a basis for an officer to believe that there was a "fair probability" that a violation occurred.[33]  Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest.[34]  Whether the crime actually occurred

---

[31]*See Roberts v. City of Shreveport,* 397 F.3d 287, 291-92 (5th Cir. 2005) (quoting *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) and specifically noting that, "[a]s a prerequisite, a plaintiff 'must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged'").

[32]*Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001).

[33]*Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000).

[34]*Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

11

or whether a suspect is eventually convicted is irrelevant to the probable cause analysis.[35]   If probable cause existed for any of the charges made, or if a reasonable police officer could believe that probable cause existed, the false arrest claim fails.[36]

Accepting the facts as alleged by plaintiff and viewing them in the light most favorable to the party asserting the injury, said allegations are insufficient to show that the conduct *of NOPD officers* violated Plaintiff's right to be free from an arrest without probable cause.[37]   In the instant matter, Terry was spotted "hanging out" on the balcony of the premises *by Iowa National Guardsmen* and then he disappeared once the guardsmen shined a flashlight on him.   The incident occurred approximately two weeks post-Katrina when a mandatory evacuation order had been issued.   The city of New Orleans was besieged with lawlessness (including looting and arson).   Indeed, the National Guard had been deployed to the city to assist in the restoration of law and order.

In this particular instance post-Katrina, Iowa Guardsmen Sgt. Harris and his team spotted Terry and found the premises of the St. Vincent's guesthouse unsecured.  Upon entering the premises, the guardsmen found contraband in plain sight and tools for forced entry.  The plaintiff evaded them during their search of the premises.  While the mode of apprehension is in dispute, it is undisputed that *the guardsmen* entered the premises and that *the guardsmen* retrieved contraband (a marijuana cigarette) in the same location where they eventually found Terry along with a weapon (albeit a broken BB gun) and arrested him.

In opposition to Defendants' motion for summary judgment, plaintiff argues that there could

---

[35]*Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 754 (5th Cir.2001).

[36]*Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002).

[37]*Hope v. Pelizer*, 536 U.S. 730, 736  (2002).

be no probable cause for any reasonable officer to believe he was in possession of the stolen goods because others resided in the guest house and he was not in actual physical possession of the contraband.  Plaintiff's argument, however, ignores the legal principles surrounding "possession" as that term is used relative to criminal offenses of this sort. Under Louisiana law, to support a conviction for illegal possession of contraband or stolen property, the State does not have to prove actual possession; rather, it is sufficient if the State shows constructive possession.[38] "Constructive possession exists when the property is within the defendant's dominion and control."[39]  Probable cause may exist even in the absence of a conviction on criminal charges.  The amount or quality of evidence required to establish probable cause to arrest is less than that which is necessary to support a conviction.  It is hornbook law that the probable cause standard requires "only the probability ... of criminal activity."[40]

### C. Claims against the City of New Orleans

A municipality generally is not liable for the actions of its agents, unless the agents' actions were pursuant to an express or tacit policy of the municipality, and therefore, under color of state law.[41]  A municipality may be held liable under § 1983, however, when a constitutional deprivation

---

[38]*See State v. Hall,* 875 So.2d 996, 1001 03-906 (La. App. 5th Cir. 2004), *cert. denied*, 888 So.2d 834 (La. 2004).

[39]*Id.*

[40]*Illinois v. Gates*, 462 U.S. 213, 235 (1983) (*quoting Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)); *United States v. Brown,* 941 F.2d 1300, 1303 (5th Cir. 1991); *United States v. Sanchez*, 689 F.2d 508, 512 (5th Cir.1982)("A showing of probable cause requires far less evidence than that sufficient to support a conviction.") (citation omitted).

[41]Municipalities are not liable for the actions of its agents under a *respondeat superior* theory.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

is caused by the execution of a policy or custom of the municipality.[42]   Consequently, municipal

liability under § 1983 requires proof of three elements: (1) a policymaker;[43]  (2) an official policy;

and (3) a violation of constitutional rights whose "moving force" is the policy or custom.[44]   "An

official policy is: (1) a policy statement, ordinance, regulation, or decision that is officially adopted

and promulgated by the [government entity] ... or by an official to whom the entity ha[s] delegated

policy-making authority; or (2) a persistent, widespread practice of officials or employees, which,

although not authorized by officially adopted and promulgated policy, is so common and well settled

as to constitute a custom that fairly represents [the entity's] policy."[45]

Because this liability cannot be predicated on *respondeat superior*, "the unconstitutional

conduct must be directly attributable to the municipality through some sort of official action or

imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger

liability."[46]

In limited circumstances, the failure to train or the inadequate training of municipal officers

can establish an official municipal policy or custom and subject a local government to liability under

---

[42]*Id.*

[43]Although even a single decision by a final policymaker can establish official policy,
*Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986), only the decisions of the official or
officials possessing "final policy making authority" represent official policy.  *Jett v. Dallas
Indep. School Dist.*, 491 U.S. 701, 737 (1988) (emphasis added).

[44]*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.) (citing *Monell*, 436 U.S. at
694), *reh'g en banc denied,* 251 F.3d 159 (5th Cir.), *cert. denied,* 534 U.S. 820 (2001).

[45]*Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir.2002) (quoting
*Johnson v. Moore*, 958 F.2d 92, 94 (5 Cir.1992)).

[46]*Piotrowski,*237 F.3d at 578 (*citing Bennett v. City of Slidell*, 728 F.2d 762, 768, n. 3
(5th Cir.1984), *cert. denied*, 472 U.S. 1016 (1985)).

§ 1983.[47]  Where municipal decision makers have notice that a training program does not prevent constitutional violations, "[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees" may rise to the level of "deliberate indifference."[48]  In fact, "the inadequacy of police training may serve as the factual basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[49]

In an action for inadequate police training, two fundamental requirements must be met: culpability and causation.[50]  Culpability is shown by demonstrating that a municipal policy or custom was "adopted with 'deliberate indifference' to its known or obvious consequences."[51]  Causation requires proof that the municipality's actions or inactions were the " 'moving force' behind the constitutional violation."[52]  The culpable policy need not be facially unconstitutional; however, the City must have enacted the policy with "deliberate indifference" to the potential for violations of the civil rights of its citizens.[53]  Deliberate indifference is a very stringent standard, and a "showing of

---

[47]*City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *see also Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997).

[48]*Bryan County*, 520 U.S. at 407.

[49]*Harris*, 489 U.S. at 388.

[50]*Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir.1998), *cert. dismissed*, 526 U.S. 1083 (1999).

[51]*Id.*

[52]*Id.*

[53]*Harris*, 489 U.S. at 387-88.

simple or even heightened negligence will not suffice" to make a city liable.[54]

A plaintiff must identify each and every policy which allegedly caused the constitutional violation.[55]  In the case *sub judice*, plaintiffs' specification of the challenged policies is vague, if not absent.  Plaintiff's Amended Complaint does not address the investigation, the search and seizure, his arrest or booking at Camp Greyhound at all.  Plaintiff has presented no evidence in support of a claim against Eddie Compass, Warren Riley or Mayor C. Ray Nagin (and thus, the City) arising out of any alleged policy of inadequate training, supervising and retaining employees.  Plaintiff points to no official written policy or persistent conduct. Plaintiff also does not allege that any failure to train resulted in any other incident in which an individual's federal constitutional rights were violated. Further, it appears to be undisputed that an Iowa National Guardsmen spotted the plaintiff, effected the entry into the St. Vincent Guest house, conducted a search of the premises and arrested the plaintiff.  The fact that the New Orleans Police Department arrived on the scene once summoned by Sgt. Harris of the Iowa National Guard and conducted a cursory search of the area does not constitute evidence that the City acted with deliberate indifference as to the known or obvious consequences of its own actions or any other agency's actions with respect to the plaintiff's constitutional rights.

In *City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988), in considering when municipalities can be liable for single episodes of conduct, the Supreme Court stated that municipal liability may lie where an authorized policymaker approves a subordinate's decision and the basis for it. Recognizing the need to prevent ratification from becoming a theory of *respondeat superior*, the Fifth Circuit has cautioned that "the ratification theory, in whatever context it arises, is necessarily

---

[54]*Bryan County*, 520 U.S. at 407.

[55]*Piotrowski*, 237 F.3d at 579.

cabined in several ways."[56]  Indeed  "policymakers who '[s]imply go[ ] along with' a subordinate's decision do not thereby vest final policymaking authority in the subordinate, nor does a 'mere failure to investigate the basis of a subordinate's discretionary decisions' amount to such a delegation."[57]

This record and plaintiff's allegations with respect to the period of time prior to his detention at Camp Greyhound focus solely on alleged improprieties of constitutional magnitude perpetrated by Sgt. Harris and his fire team (*not officers of the NOPD*).   The Court is not presented with a situation where municipal policymakers have approved a  "decision and the basis for it." *Prapotnik*, 485 U.S. at 127.   Instead, the allegations and all of the evidence are uniformly that the NOPD was called to the scene after Terry had been detained and conducted a cursory search of area prior to the departure of the guardsmen with plaintiff who was suspected of criminal activity including looting.

Policy equates with either (1) a statement, ordinance, regulation, or decision officially adopted or promulgated by officials with policymaking authority; or (2) a persistent, widespread practice of city employees that is so settled as to constitute a custom that fairly represents a municipal policy.[58]  Plaintiff has alleged neither.  The pleadings are devoid of even generalized allegations, which nevertheless would not implicate a custom or policy promulgated by city officials, and therefore, the plaintiff does not state a § 1983 claim under the law.  Moreover, plaintiff's complaint refers to no misconduct by *New Orleans police officers*.   Based upon the complaint and evidence submitted by

---

[56]*Milam v. City of San Antonio*, 113 Fed.Appx. 622, 626-27 (5th Cir.2004).

[57]*Id*. at 627 (quoting *Prapotnik*, 485 U.S. at 130).

[58]*Cozzo*, 279 F.3d at 289 (5th Cir.2002) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5 Cir.1992)).

the City, these incidents of alleged misconduct implicate only the guardsmen and cannot meet the test of what is a municipal policy.  Moreover, the Court cannot ascertain any specific policy connecting the events complained of with the New Orleans Police Department  or any supervisory municipal officials.  On its face, plaintiff's complaint suggests that the acts allegedly perpetrated by the National Guard and others not employed by the City of New Orleans  must be pursuant to a policy or custom of the City (as well as the Mayor, Police Superintendent and his Chief Officer). Such generalized allegations (in this case *innuendo*), without supporting factual references, are insufficient.

### D. Claims against City Officials

Similarly, the plaintiff has failed to state a claim against Mayor Nagin, Chief Riley and former Superintendent Eddie Compass. Supervisory officials are not in law vicariously liable for a subordinate's actions;  rather, Section 1983 liability only applies if the officials actively participate in acts that cause constitutional deprivation, or implement unconstitutional policies that causally result in plaintiff's injury.[59]  The law applies across the board to all elected and appointed city officials.

Plaintiff has made no allegation that the Mayor participated in any wrongful acts, nor does plaintiff's complaint support a claim that the Mayor implemented an unconstitutional policy.  A conclusory allegation that the collective defendants had a custom, practice and policy which led to the denial of the plaintiff's constitutional rights is insufficient in law to state a Section 1983 claim against the Mayor.   Plaintiff must plead some facts that, if proven, warrant the relief sought.[60]

---

[59]*Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.), *cert. denied*, 508 U.S. 951 (1993).

[60]*See Arnaud v. Odom,* 870 F.2d 304, 307 (5th Cir.), *cert. denied*, 493 U.S. 855 (1989).

In summary, plaintiff has not identified a particular policy or custom of a particular department or policy-level individual and thus fails to state a claim pursuant to Section 1983 against the aforesaid municipal officials . Further, the plaintiff has failed to provide facts to substantiate that NOPD officers participated in the alleged unlawful entry of the premises, the search of the premises prior to plaintiff's arrest,  Terry's arrest, his transport to custody or booking.  All of the aforesaid actions were by all accounts performed by Iowa National Guardsman Sgt. Harris and members of his fire team.

Accordingly and for all of the aforesaid reasons,

**IT IS ORDERED** that the Municipal Defendants'  Motion for Summary Judgment (Rec. Doc. No. 46) is GRANTED and the Municipal Defendants' Motion for Protective Order (Rec. Doc. No. 47) is DISMISSED AS MOOT.

New Orleans, Louisiana this 17ᵗʰ day of October, 2007.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**