MINUTE ENTRY
KNOWLES, M. J.
JUNE 15, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES ALLEN TERRY, JR. | CIVIL ACTION |
| VERSUS | NO. 07-469 |
| CITY OF NEW ORLEANS, ET AL | SECTION MAG (3) |

On May 27, 2009, Warden Cornel Hubert's Motion for Summary Judgment regarding Qualified Immunity came on for hearing before the undersigned Magistrate Judge with counsel for the Warden and the Plaintiff present and participating. The facts of the case at bar include that the plaintiff, James Allen Terry, Jr., was detained for almost seven (7) months without a facially valid warrant/order of arrest, no charge, no arraignment, no investigation and no process despite his written protest campaign addressed to the Warden, *inter alia*. Pursuant to the hearing, the Court denied the Warden's Motion for Summary Judgment noting that an order and written reasons would issue. Reasons for denying the Warden's motion for summary judgment are set forth below.

Two causes of action remain in this lawsuit,[1] to wit: (1) alleged violation of Plaintiff's First Amendment Right of Access to the Courts because he was allegedly denied information necessary to act to secure his release, including inmate counsel and the law library; and (2) alleged violation of Plaintiff's Fourteenth Amendment Right to Due Process because he was detained for over six (6) months without any charges, a valid warrant or a court order and

---

[1] *See* Order dated May 21, 2009 (dismissing the balance of plaintiff's claims against Warden Cornel Hubert pursuant to Plaintiff's Notice of Voluntary Dismissal) [Rec. Doc. 111].

1

MJSTAR(00:14)

notwithstanding being placed on notice via written requests of the plaintiff's quest for release from illegal detention.

Detention subsequent to seizure triggers Fourteenth Amendment rights to due process. In *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Court observed that "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf - through incarceration, institutionalization, or other similar restraint of personal liberty - which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." That liberty interest is implicated when a person is confined. *Reno v. Flores*, 507 U.S. 292, 315-316, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

Qualified immunity shields state officials from personal suits when they act in their official capacity "'insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stidham v. Texas Comm'n on Private Sec.*, 418 F.3d 486, 490 (5th Cir.2005). Given the analytical framework[2] -

---

[2] Courts apply a two-part test to decide when qualified immunity protects an individual defendant. First, the court determines whether the plaintiff has alleged a violation of a clearly established constitutional or other federally protected right. If so, the court evaluates whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). If, after considering the evidence in the light most favorable to the plaintiff, the court answers either inquiry in the negative, the defendant is entitled to qualified immunity. *See Stidham v. Texas Comm'n on Private Security*, 418 F.3d 486, 493 (5th Cir. July 22, 2005).

The concept of conduct which is "objectively unreasonable" in light of clearly established law is difficult to grasp. The factual situation from which the pre-existing constitutional right developed does not have to be "fundamentally similar" to the one before a court when addressing qualified immunity. *See Williams v. Kaufman County*, 352 F .3d 994, 1003 (5th Cir.2003). Rather, qualified immunity can be overcome as long as "'prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* Officials can still be on notice that their conduct violates established law even in novel factual circumstances. *Id.*

including the heightened pleading standard established in *Schultea v. Wood*, 47 F.3d 1427, 1433 - the court must look to whether the plaintiff's complaint contains factual allegations that, if proven, would show both a violation of a clearly-established right and also that the alleged conduct was objectively unreasonable.

Plaintiff in this case asserts that: (1) his Fourteenth Amendment right to be free from unlawful detention was clearly established prior to the almost seven-month period of incarceration at issue;[3] and (2) his First Amendment right of access to the courts was clearly established prior to the lengthy detention period at issue.[4] The Court agrees that both are clearly established rights. That leaves for determination the question of whether the Warden's conduct was "objectively unreasonable" in light of the clearly established law.

The issue is whether the Warden was objectively unreasonable in detaining Terry over 200 days post-Hurricane Katrina until April 4, 2006 without a court order, without a charge, without a hearing, without any investigation of his written complaints of unlawful incarceration and without allowing him access to the law library or to inmate counsel, despite alleged notice of Terry's lengthy unlawful detention at Hunt Correctional Center.

---

[3]*Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992); *Simmons v. McElveen,* 846 F.2d 337 (5th Cir. 1988).

[4]Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability-the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356; *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999) (per curiam) (the right encompasses a reasonably adequate opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement). To succeed on a claim of denial of access to courts, plaintiff must show that he lost an actionable claim, *or was prevented from presenting such a claim because of the alleged denial*. *See Lewis*, 518 U.S. at 356 (italicized emphasis added).

As stated at the time of the hearing in this case, with respect to the second prong of the qualified immunity equation, material issues of fact exist.[5] For instance, *even when considering only the Warden's testimony*, the following material issues of fact are genuinely disputed, to wit: (1) whether the Warden believed in "good faith" that he had the authority to detain the plaintiff – who had never been charged with a crime/arraigned – for a period of time in excess of six (6) months;[6] (2) whether the Warden believed in "good faith" that Marlin Gusman had authority over detainees being housed at the State of Louisiana's Hunt Correctional Center;[7] and (3)

---

[5]*See* Plaintiff's Memorandum in Opposition at pp. 11-14 and Plaintiff's Statement of Disputed Facts at Item 14-35 [Rec. Doc. 110]; Transcript of the Deposition of Warden Cornel Hubert at pp. 16-18, 21-23, 29-30, 36 [Rec. Doc. 117-2]; Deposition Exhibits 1-9 [Rec. Doc. 117-3].

[6]*See* Transcript of the Deposition of Warden Cornel Hubert taken May 13, 2009 at Exhibit #2, including Correspondence from Warden Hubert dated January 11, 2006 (responding to Terry's letter that the State had until 1/6/06 to file formal charges or release him and noting that he understands the frustration but cannot release a detainee until notified by the Courts) and Terry's handwritten note to Warden dated January 6, 2006 (noting that the State had until January 6, 2006 to file formal charges or set us free, explaining "many of us have been here for 90 to 120 days" without being arraigned, asking "why the Supreme Court of Louisiana is being ignored," pleading "PLEASE let me know something," highlighting that "we [meaning pretrial detainees] know nothing" and politely thanking the Warden in advance for his time and patience) [Hubert Deposition Exhibit #2]; Memorandum from Warden Hubert to Terry dated February 16, 2006 "re Recent Letter" (stating "I do not have time to provide inmates with addresses" and "[p]*erhaps,* an inmate counsel can help you in this matter") [Deposition Exhibit "7"].

[7]*See* Hubert Deposition at pp. 14, 41 (stating that he simply followed the orders of the Louisiana Secretary of the Department of Corrections, Secretary Stalder); *Id.* at p. 18 (stating that he was waiting for the judges in New Orleans who would decide and notify him as to which detainees to release); *Id.* at p. 23 (the detainees were still under the jurisdiction of the Orleans Parish Prison – *i.e*., "we took orders from the staff from Orleans Parish Prison ... and that's the direction we received when we were to release someone or move someone"); *Id* at p. 25 ("we received orders from headquarters," "adult services" – either the Chief of Staff Johnny Creed or Mary Kennedy in Baton Rouge as to who would be released); *Id.,* at p. 34 (stating that he did not know whether Mary Kennedy was employed by the Orleans Parish Criminal Sheriff or not); *Id.* at p. 36 (stating that he did not investigate detainees claims of unlawful detention and he had no idea who was doing so); *Id.* at p. 41 (stating that he had no jurisdiction over pretrial detainees' release); Memorandum from Louisiana's Dept. of Safety and Corrections dated April 4, 2006

4

whether the Warden believed in "good faith" that pretrial detainees such as Terry were in fact being permitted access to applications for release, habeas petition forms and/or other necessary information *via* inmate counsel or otherwise while housed for months on end at Hunt Correctional Center without having ever been formally charged with a crime.[8] The internal inconsistencies in the Warden's testimony alone – which are detailed herein above and below at notes 6, 7 and 8 – convince the undersigned that it would be improper to resolve the plaintiff's remaining constitutional claims short of trial on the merits.

Where, as here, the court denies an official's motion for summary judgment based on qualified immunity, it is considered to have made two distinct determinations, even if only implicitly.[9] First, the court decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law; second, the court decides that genuine issues of fact exist regarding whether the defendant did, in fact, engage in such

---

(stating that Terry can be released having been cleared by Col. Mary Kennedy of the OPCSO) [Deposition Exhibit "6"].

[8]*See* Hubert Deposition at p. 16 (stating that the *law library was not available to detainees* but that two inmate counsel *made rounds at least once a week*, both of whom had been released and he could only remember the last name of one of the two inmate counsel (Torres)); *Id.* at p. 30 (stating that the law library is computerized small facility and so the procedure for detainees is to *go to inmate counsel*); *Id.* at p. 31 (inmate counsel are available in the law library to assist those that are there). *See also* Memorandum from Danny Williams/Mental Health Director at Hunt Correctional Center dated January 9, 2009 (advising plaintiff that his release "is governed by the jurisdiction that arrested" him and advising him to contact "*them*" (not otherwise specified) [Hubert Deposition Exhibit "3"]; Letter from Mary Ann Terry to Warden Cornel Hubert dated January 26, 2009 (noting that Terry has been held at Hunt for over four months "with no end in sight" even though the Louisiana Attorney General's office said that detainees would be released after sixty days and informing the Warden that Terry is an honorably discharged veteran of the U.S. Army and a member of the West Virginia National Guard, "who has never been in trouble in his life").

[9]*Collins v. Ainsworth,* 382 F.3d 529, 536 (5th Cir. 2004) (citing *Kinney v. Weaver,* 367 F.3d 346 (5th Cir. 2004) (*en banc*)).

conduct.[10]

For all of the above and foregoing reasons and pursuant to the hearing, the Court issues the following order, to wit:

**IT IS ORDERED** that Warden Cornel Hubert's Motion for Summary Judgment (Rec. Doc. 97) seeking dismissal of plaintiff's remaining claims on the basis of *qualified immunity* is DENIED.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[10]*Id.*